Case 14-1846 Ming Yang et al. v. City of Wyoming, Michigan Oral argument not to exceed 15 minutes per sign Mr. Gerville Rayoche for the appellants Mr. Gerville Rayoche on behalf of the appellants, I have requested three minutes of rebuttal time. May it please the court. The district court here entered judgment on the Yang's procedural due process claims for two reasons. First, the court said that the City, by the time the notice of demolition had returned unclaimed, had already done enough to notify the Yangs by sending a hearing notice that referred to the demolition notice and by posting the demolition notice on the Yang's vacant building. So it didn't need to take the minimal effort that normally would be required under Jones v. Flowers to resend the demolition notice. The second reason the court ruled against the Yangs is that it said that the City had given the Yangs an opportunity to be heard, or rather informed them of their opportunity to be heard by the court. Now I don't think we have to spend much time on that second ruling because it's quite apparent that the court there was confusing judicial process with due process. The City is the one that has the obligation to provide an opportunity to be heard. It cannot delegate that authority to the courts. So that leaves the issue of can you take multiple attempts at notice, each of which is inadequate on its own, and together they turn out to be adequate notice. In this case the answer is no for a simple reason. If the hearing notice doesn't have the information the Yangs need to have a meaningful opportunity to be heard, the fact that you have a demolition notice that does have that information, but that is sitting in an envelope unclaimed in the City of Wyoming Hall and posted on a vacant building, doesn't solve the problem that there's insufficient notice, insufficient information in the hearing notice. Yeah, but I mean you're getting very close to actual notice, and we all know that's not the case, right? We all know the test is whether the City, the government, did what was reasonable in their circumstances to provide, quote, actual notice. It's not whether they actually did. That's right. Okay, so, and then we have your best case, which, you know, the key point there is, well, you did certified mail. It gets returned, and you did, quote, you know, dash nothing. And that's not this case. And then they say in the Supreme Court case, well, you know, you could have tried the next option, which is regular mail, where you don't have to have a sign, a signed receipt. And they do that. It's not returned. You have this statement in the record that they had received something and decided to ignore it, and we're allowed to consider that. I mean there's nothing opposing that. That's in a statement against interest, so it's admissible. So, and the notice that comes by regular mail does say there's a risk of demolition of this piece of property. I mean, I'm just, I'm really struggling with the idea that there's some unfairness going on at that point. Well, I think in that case the position would have to be that the hearing notice had the information that Yangs needed. Because, again, if that doesn't have the information that Yangs need, and the city knows that the Yangs haven't gotten the demolition notice that does, the fact that they tried to send it and it came back unclaimed really doesn't solve the problem. But let's consider what the inspector knew when he went to the hearing. Because notice isn't just about the steps the cities take. This isn't just a check the box kind of process. When the inspector went to the hearing, he knew that there was a notice posted on the vacant building. Now, there's a fact question about what that notice said. But let's set that aside because I don't think it's material. Because we know that posting a notice on a vacant building really doesn't cut it when you know that they have a deliverable address. And the inspector knew that the ordinance required him to send a demolition notice. And he did that. But by the time he got into the hearing... How about if we put it this way? If the notice that is sent by regular mail, I take it you agree, if that checked all the boxes in terms of identified the ordinances that were being violated and every single thing that could be in that notice in terms of allowing your client to prepare for a hearing, would you agree the case is over from a procedural due process perspective? We're talking about the hearing notice? Yeah. The notice that was sent by regular mail after certified mail failed. You would agree, wouldn't you, if that piece of paper or pieces of paper had every single thing you could possibly have in there, the case is over from a procedural due process? Absolutely. You would agree. You would agree. Right. So now this all turns on the fact that you're told they're going to demolish the building. And I'm just struggling with how that's not enough. I just got to say. There's two things I want the court to take away from this oral argument about the hearing notice. Okay. One, that's the first notice the Yangs would have received in the mail. That's the very first notice they would have received that there was any problem at all. And it says that it's a notice about a hearing before the Wyoming Housing Board of Appeals. Now, someone who has experience with these notices, I will concede, might look at the Latin term re at the top of the notice and the address that happens to be their property and would know that that means in reference to your property and that this is a hearing about your property. And someone who is really being cautious and perhaps a little suspicious of their government would contact the city and say, What is this about? Because I don't own a house on this property and I don't know. But not everyone is going to come away with that impression when they first look at this. But what would the impression be? I mean, it's the city notice to repair or demolish the structures in conformity with Chapter 10 of the Code of the Wyoming. I mean, what would a normal person think about that? Well, I think a normal person would think, you know, it sounds like the city is about to tear down some slumlords, rat-ridden, cockroach-infested house. Well, that's what this was. Apparently, it was their property. Well, oh, no, this was not a rat-infested, cockroach-ridden house. Well, it was an abandoned building. It was a 5,000 square foot commercial building that 18 months earlier had been a fully operational restaurant. But in that period of time had not been occupied or kept up. Had not been occupied and I will readily concede that perhaps the gangs could have been more diligent in going by their property, making sure that it was upkept. But when this is the first, this is not the first thing people expect to see before the city tears down their building. Why? I don't understand why. Because they expect to know that there's a problem. They want to, they expect that the government is going to tell them what they've done wrong before they, and why they would deserve to have their building torn down. Why wouldn't they go to the, this was an October 18th mailing for a hearing coming up November 1st. So why wouldn't they show up at the hearing? They got the letter. Well, some people would. I will concede that some people would show up because they would be concerned. But, you know, we have a lot of people in our communities that aren't that cautious. And our notice requirements aren't supposed to just protect the weary and just protect the educated or protect those who have experience with these things. Behave reasonably. It's just reasonable. What would the reasonable person do? But our notice requirements should protect also those who are unwary. But then there was a November 7th letter after the hearing that again sent first class and not returned. It tells them, all right, there was a hearing. Your property is going to be demolished. Now, the demolition didn't occur until, what, January of the next year, right? Middle of January. Middle of January. So between November 7th and, you know, in January, why didn't they at that point say, ooh, this sounds really serious. Let's do something about it. Well, my clients don't recall getting that notice. But I know that that's not the issue when you're talking about due process. The issue is did the city provide a reasonable opportunity to be heard and put them on notice of that? It is actual notice. They're reasonably calculated to provide actual notice. We used to have a system of constructive notice where posting and publication was fine, but we did away with that 60 years ago. We understand what the standard is on this score. Reasonably calculated to give actual notice. So this one, Judge Gilman's point, I mean, this was still a chance to correct the problem. I mean, this was a chance to say we had no idea what that earlier letter meant. In other words, to say what you said today. There was a lot of options. I mean, and it's just you ask yourself at some point, it's an important city function to deal with property that's not being kept up. That's a pretty important function of government. So, I don't know. You just have to ask yourself at what point is enough enough. I think that if we have to concede that if all they've gotten is a decision notice, that that's not the due process that they're entitled to. I know, but that, of course, is not what happened. It's not. And so the question again becomes can you aggregate all these together? And my point is that if there's certain information the Yanks are supposed to have, but you know they didn't get it, it doesn't help that you tried to send it to them one way and it didn't go. Again, think about what the inspector knew. Yes, he sent the demolition notice by certified mail return receipt requested and it came back unclaimed. But he also sent the hearing notice by regular mail. And by the time the inspection came wrong, it hadn't come back. How hard would it have been to just send the demolition notice by regular mail? That's the notice that they were required to get under the city's ordinance. And this court in Palmer agreed that that's the sort of notice that the Yanks were entitled to. They were supposed to know what they did wrong and why the city would I'm not following this last point. Are you making the point that after the November 7th letter there should have been another letter? Is that what you're saying? I'm just not following the point you're making. No, my point is that at the November 1 hearing, when the city inspector came to the board and said, well, I want to demolish this building, I'm asking you to approve that, the Yanks didn't get the notice I sent them. You're saying he should have said that? No, he did. He did tell them. He told them the Yanks did not get the demolition notice that I sent. It came back in the mail unclaimed. He knew at that point he had sent a notice by regular mail and it hadn't come back. Okay. So I'm still not getting the point. That's a good thing that that one didn't come back. It is. Okay. But it doesn't have the information the Yanks need. The Yanks need the information. They need to know what they've done wrong and why. In other words, the reference to Chapter 10 and repair and demolish, that's your key point. You needed more than that for them to know what to do. That's not enough to know there's something they need to do. It's not hard to give them more information than that. Well, that's always true. And these notice requirements, again, they're not to protect those of us who know how to go look up these ordinances and find out what they say. They're to protect people who don't know how to protect themselves. That's why we have these notice requirements. We have a lot of immigrants in our community. Let me make sure I'm getting the point but also give you a chance to respond if I am getting the point. So a way of comparing these is the October 18th, the regular mail, and then the notice of posting September 11th. I assume the notice of posting has the kind of information you think it would have been helpful to include in the October 18th letter. Am I right about that? I think the notice of posting says that there are problems with the building. So, yes, that would be good to have that in there. It doesn't tell the gangs what the city is going to do about it. Right, right. Now, I'm not saying the same. I'm saying what you think would have been in the ideal was October 18th type letter, but then with all the explanations added to it about what it is that's wrong in each thing, right? I think that if they just had the notice of demolition, that would have been enough. Not even just had it. If the city had just sent it by regular mail and they hadn't come back, that would have been enough. And it's not hard to do. And maybe if they had done that, then my clients would have known what was going on. And my point, and I really want to make sure that you understand what I'm trying to say, and you don't have to agree with me, but I'm really trying to make sure you understand. We're all looking at this in retrospect, knowing the end of the story, looking at this hearing notice saying, well, of course, they were going to tear down their building. But someone who has never had any communication from the city before about this building and no indication that there's even a problem, some of them aren't going to think when they first look at this, oh, no, the city's going to tear down my commercial building because it's noticing a hearing before the Wyoming Board of Appeals and it doesn't even suggest to them that they've done anything wrong. So why would they think that they have? You know, a lot of the immigrants that come here, they come because they think the government's going to protect them better than the one that they left and provide them and at least tell them what they've done wrong and why, and maybe even give them a chance to fix it the way the city does under its own ordinance. That didn't happen here. And it would have been really easy to do that by just resending it. That's all we're asking. Counsel, you may want to wrap up. Your red light's been on for quite a long time. I don't know how much time I have left for rebuttal, but I'll reserve the rest of my time for that. All right. Good morning, Your Honors. My name is Jack Slider. I'm the city attorney for the city of Wyoming. In reviewing this prior to this hearing, I reread Judge Bell's opinion several times, and I think I'm really prepared to stand on Judge Bell's opinion because he went through the entire process. A couple of things. It's important to note that this isn't a case where, under the Flowers decision or Mullane, the government did nothing else. They sent the matter to the Housing Board of Appeals. They provided the Yangs with a notice. And let me just go back one step here. The notice to repair or demolish was sent to the proper address, which everybody admits the Yangs live at this address, by certified mail. It didn't come back undeliverable, moved, left no address. It came back unclaimed. So this is a situation where the Yangs can say, well, we didn't know. Well, that's just like Flowers, isn't it? It is if we had done nothing else. I know, but I'm just trying to tell you that I don't know how much mileage you're getting out of that, given that that was similar in Flowers and didn't do much good. I understand. But then the notice of hearing was sent out. And Plaintiff's Counsel says, well, it didn't give them the information they needed. And I think Judge Sutton, you correctly pointed out, and Judge Gilman, the purpose of this hearing is to hear all interested parties regarding the city's notice to repair or demolish the structure. In conformance with Chapter 10 of the Code of the City of Wyoming. Their address is on there. It says they have the right to attend the hearing. I don't know what else we could do other than. . . Well, I think he would prefer to see some of the things in the earlier letter or in the notice in particular, where the notice, you know, his point is letting them know what they, quote, did wrong, as opposed to letting them know the consequences of whatever it is they did. And I guess that's his point, that this. . . And I think he admitted he loses if the October 18th letter has some of the stuff in the notice of posting, for example. Well, and I would respectfully submit that it does. Okay. And I think it complies with particularly the Mullane decision that its notice reasonably calculated under the circumstances to apprise the parties of the pendency of the action and afford them the opportunity to present their objections. And I think there's one other thing that's important to remember, and it just . . . Mr. and Mrs. Yang still own this property. I think contrary to a lot of these other cases where the property is gone but sold to someone else as part of these proceedings or something like that, the only thing that's happened here is that a dilapidated building that has not been used for over a year, the equipment's been removed, it's been broken into, has been taken off the property. They still own that property. They haven't been deprived of their property. They've been deprived of nothing, a dilapidated building. The property's still for sale. They could redevelop that property tomorrow. They don't have to tear down the building. They had to pay for the demolition, didn't they? That's correct, which they would have had to if they had to redevelop the property anyway because the building had deteriorated to that point. Why didn't the city, though, when the inspector knew that the notice came back certified mail unclaimed, why didn't he just mail the same notice first-class mail? Because there was other steps in the process which included going to the housing board. Yeah, but, I mean, probably it would have been, if the city had done that, you wouldn't have to be here today. Retrospectively, yes. So a matter of procedure would have been better to do. But I would also add that this notice with this information was posted on their building. And, again, at a certain point, there has to become some obligation of a property owner to say, you know, I'm getting notices regarding this building. Maybe I ought to go take a look at it. You know, I understand from the record that the property taxes were still being paid on that building. And if the property taxes were being paid, that should have put the city on notice that the owners were still interested in the property and also would have been an easy way to contact the owners through the tax records. That would have avoided a lot of this problem, don't you think? And that would have, why didn't the city go that route? Well, they did with the notice of hearing. It was sent, again, the notice, the original notice to repair and demolish was sent to the proper address based on property taxes. But if the owner is still paying taxes on the property, that raises the issue of whether they want their building torn down, it would seem. And I would think that the city would act with a little less dispatch under those circumstances. Well, the building had remained vacant for over a year. They sent notice to the proper address that said, in two weeks we're going to have a hearing on whether or not to tear down this building. Sent it by regular mail to the correct address. After the hearing, they sent notice by regular mail to the correct address that said, we're going to tear your building down. You have the opportunity to appeal, and yet these people did nothing. I think they can't say, well, we don't know, and then just let the system grind to a halt based upon the fact that they say, well, we're not sophisticated enough to do that. These are business people. They ran a business there for quite a few years. Of course, was the building boarded up or was it open to derelicts and the elements? It was originally boarded up. The equipment had been removed from the building. Over the course of time, it was breached. In fact, one of the reasons why it was posted is because when the inspector went in the building, a lot of the things in the building, the piping, the city water meter in the building, had been stolen, obviously by someone who broke into the building and took those items. So, yes, the building was becoming dangerous in addition to the fact that it was unused. But you're not claiming that there was some health and safety emergency that required immediate demolition. You're not making that argument, are you? The building was deteriorating to the point where the roof was starting to sag. Obviously, no one was in the building, but the fact is that the building was... But you're not arguing that there was an immediate threat to health and safety? No, not that they had to go in there. And that's why they went through this process of going through the Housing Board of Appeal, notifying the Yangs that they had the right to be at the hearing. And, in fact, demolition was postponed, what, two months even after the hearing? That's correct. What does the record show in terms of the city's valuation of the building pre-demolition and post-demolition? Did the value of the property go up or down between those two dates? Does the record show that? It does not because the judge did not get to that issue. What's your suspicion? I mean, does the property... Because it's possible the property value goes up once you've removed the building, but it also is possible... No, no, no, that's not true because it's cheaper to repair than to rebuild. What's your suspicion? My suspicion, based upon the witness that we were prepared to present, was that the property was worth more with the building gone because in order to redevelop that property, it's basically an area on a major thoroughfare in the city that's surrounded by fast food restaurants. Because I was taking their theory of the case and saying how funny it is because if their theory of the case is right, what the city did is it hurt itself as a matter of revenue because if the value of the property goes down through the city's actions of demolition, property taxes go down with it, which has just never occurred to me. The value of the property was going down because of the condition of the building. The city had recognized that in its property tax evaluation. But property taxes are not appraisals of the property, and we made that clear. They took the deposition of the deputy assessor who indicated, I didn't appraise that building. It was strictly a mass appraisal process. And the fact that the property was vacant, that the city lowered the property taxes. Of course, if the value of the property went up as a result of the demolition, to figure out the value of the property to the property owners, you'd have to subtract from that you'd have to take account of the fact that they have to pay for the demolition. So you have to take all that into account in arriving at the cost of the demolition to the owner. I would anticipate that if someone was going to buy that property to redevelop it, they would take that into consideration in the offer that they made to purchase the property, that someone is going to have to demolish that building. Thank you. Unless the court has any further questions. Apparently not. Thank you. Thank you. Counsel, did you reserve some time for rebuttal? A few minutes. I'm not sure. Okay. Sure. Okay. Thank you, Your Honor. I want to correct just a few things that were said here by my colleague. One is there's no evidence in the record that the property value went up as a result of the demolition. The evidence is only that the property value went down. I was making the point because it's kind of funny that it's hurting them. It's hurting the city. I don't think anyone was thinking about any of that when they were going through this process. Certainly the Yangs weren't because they didn't have any clue what was going on. But there's evidence of that, not only from the fact that the city is now assessing less taxes now than it was before, but it's not fair to say that the assessor only conducted a mass appraisal. Mass appraisal is where you look and aggregate at all the properties and incrementally how much did they go up, and you apply that ratio to every single property. That's not what she did. Because the Yangs had come to the Board of Review asking for a reassessment of what the property was worth to challenge the mass appraisal she had done. And she did a comparative value analysis like any appraiser does to determine what exactly the property value was and reduced it as a result. Secondly, we have to be very careful not to go into the realm of actual knowledge here because that's not what the due process argument is about. If they wanted to prove actual knowledge, it was their burden to do so, and the Yangs have a verity that they didn't know what was going on. But isn't it a relevant factor that there's evidence in the record that's not rebutted that they got one of these letters and decided to ignore it? There's not actually evidence in the record that they got one. I thought there was evidence from one of the city's employees who had a phone call with them and they said they'd gotten some letter about this but ignored it, threw it out, whatever it was. Oh, I see, yes. Is that not in the record and that's not been rebutted? It has been rebutted, actually, because the Yangs submitted an affidavit. They never contacted the city. What happened, now, this is outside the record just as is. No, just stay in the record. I don't want to hear outside the record. Stay within the record because what I'm referring to is in the record, right? Okay, so you're saying we can't rely on that? That's not relevant? The Yangs never contacted the city is what they said, so it's an issue of fact, if anything. But it's not really relevant because you've got to recall what exactly the inspector said. He said that they got, his testimony was that, oh, we got the notice of demolition in the mail and we didn't pay attention to it or we must have ignored it. We know as a matter of fact that they didn't get the demolition notice in the mail. It was sitting in an envelope unclaimed at City of Wyoming Hall. So there's not really a fact question about whether they got the demolition notice in the mail. They never did, and we know they didn't. And the testimony of the city employee is clear about which letter we're talking about? Because the quote is, it says, Mr. Yang confessed to, quote, getting the mail that said something about fixing up the building and ignoring it. Okay, so? The hearing notice says nothing about fixing up the building. Repair? Well, I suppose you could, they could infer that that means that they're supposed to repair the building. That's just another problem with the hearing notice. I mean, it's ambiguous as to what exactly the city is going to be doing. Is it having a hearing on whether they have to repair or demolish the building? What is it having a hearing about? And I realize I've got two hurdles here. First, I've got to show that, I'm sorry, I just realized that my time is up. Are you going to repeat your statement and conclude? I have to show that the hearing notice doesn't have enough information in it, and I have to show that they didn't make a good enough effort to send, to get the demolition notice to the Yangs, because there's no question that the Yangs didn't get that in the mail and that they have to resend it. You have to consider that the hearing notice was the first notice they would have ever received, and what would, are we really going to say that that's the sort of notice the city should send, and that's it before it tears down someone's building. All right. Thank you, and the case is submitted. There being no further cases to be argued, you may adjourn court.